UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
—————————————————————————

THOMAS QUINLIVAN,

               Plaintiff,

      V.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

—————————————————————————

**REPORT AND
RECOMMENDATION**

08-CV-1175
(MAD/VEB)

## I. INTRODUCTION

In December of 2005, Plaintiff Thomas Quinlivan applied for Disability Insurance Benefits ("DIB") under the Social Security Act and, in March of 2006, he applied for Supplemental Security Income ("SSI") benefits. Plaintiff alleges that he has been unable to work since June of 2005 due to various physical impairments. The Commissioner of Social Security denied Plaintiff's applications. Plaintiff, by and through his attorney, Peter M. Margolius, Esq. filed this action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 12).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for DIB and SSI benefits, alleging disability beginning on June 26, 2005. (T at 66-67).[1]  The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on October 16, 2007, in Albany, New York before ALJ J. Lawson Brown.  (T at 225).  Plaintiff appeared, along with Janice Cammarato, a paralegal from Attorney Margolius's office, and testified. (T at 227-42).

On November 6, 2007, ALJ Brown issued a decision finding that Plaintiff had not been disabled, as defined under the Social Security Act, from June 26, 2005 (the alleged onset date), through the date of his decision. (T at 16-23).  The ALJ's decision became the Commissioner's final decision on September 5, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 4-6).

Plaintiff timely commenced this action by filing a Complaint in the United States District Court for the Northern District of New York on November 3, 2008.  (Docket No. 1). The Commissioner interposed an Answer on February 19, 2009. (Docket No. 8). Plaintiff filed a Brief in support of the action on April 6, 2009.  (Docket No. 9).  The Commissioner filed a Brief in opposition on May 22, 2009. (Docket No. 22).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and that judgment be entered in favor of the Commissioner.

## III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

3

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

To be eligible for DIB, a claimant must be "insured for disability benefits." 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1). An applicant's "insured status" is generally dependent upon a ratio of accumulated "quarters of coverage" to total quarters. 42 U.S.C. § 423(c)(1)(B). "Quarters of coverage" include quarters in which the applicant earned certain amounts of wages or self-employment income. 20 C.F.R. §§ 404.101(b), 404.140-404.146; see also Arnone v. Bowen, 882 F.2d 34, 37 (2d Cir. 1989); Batchelder v. Comm'r of Social Sec., No. 07-CV-00354, 2009 WL 1559815, at *7 (N.D.N.Y. June 3, 2009).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009.  He further found that Plaintiff had not engaged

---

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

in substantial gainful activity since the alleged onset date.  (T at 18).

The ALJ concluded that Plaintiff had the following impairments considered "severe" under the Act: neck, back, and hip pain. (T at 18).  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 19).  The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work. (T at 19).

The ALJ concluded that Plaintiff was not able to perform his past relevant work as an automobile technician or factory worker, because those jobs required the performance of significant lifting, which was precluded by Plaintiff's RFC. (T at 22).   However, considering the Plaintiff's age (45 years old on the alleged onset date), education (limited), and RFC (light work), the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 22).  Accordingly, the ALJ found that Plaintiff had not been under a disability, as that term is defined under the Social Security Act, from the alleged onset date to the date of the ALJ's decision. (T at 23).  As noted above, the ALJ's decision became the Commissioner's final decision on September 5, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 4-6).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  He offers four (4) principal arguments in support of this position.  First, he challenges the ALJ's residual functional capacity determination, contending that the ALJ made contradictory findings.  Second, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.  Third, he contends that the ALJ did not properly apply the treating

physician's rule.  Fourth, Plaintiff asserts that the Appeals Council should have remanded the matter for consideration of additional evidence.

### a.   RFC  Determination - Alleged Contradictory Findings

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ found that Plaintiff retained the RFC to perform the full range of light work. (T at 19).  "Light work" is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR § 404.1567 (b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id.

Specifically, the ALJ concluded that the "totality of the evidence" indicated that Plaintiff retained the ability to sit for 6 hours with normal breaks, stand for six hours with

normal breaks, lift 20 pounds occasionally, and occasionally bend. (T at 22).  The ALJ found that Plaintiff was precluded from heavy lifting by his back, hip, and leg pain. (T at 22).

Plaintiff contends that the RFC finding is contradicted elsewhere in the ALJ's decision.  Specifically, Plaintiff points to the ALJ's statement that Plaintiff's "established residual functional capacity is consistent with the ability to . . . stand for two hours . . . ." (T at 21).  Plaintiff argues that this discussion amounts to a finding that Plaintiff was limited to standing for two hours, which contradicts the ALJ's later conclusion that Plaintiff retained the RFC to stand for at least 6 hours.

This Court finds this argument unavailing.  The ALJ concluded that Plaintiff retained the RFC to stand for 6 hours in an 8-hour workday.  (T at 22).  An ability to stand for 6 hours necessarily implies the ability to stand for 2 hours.  The ALJ did not conclude that Plaintiff was "limited to" standing for 2 hours and, as such, his statements concerning Plaintiff's ability to stand are not mutually exclusive.  In other words, the ALJ simply said that Plaintiff's RFC was "consistent with" an ability to stand for 2 hours.  An ability to stand for 6 hours is consistent with an ability to stand for a lesser period of time.  In any event, for the reasons set forth below, the record contains substantial evidence to support a finding that Plaintiff can stand for 6 hours in an 8-hour workday.  This Court finds no reversible error with regard to this aspect of the ALJ's decision.

### b.   RFC Determination - Substantial Evidence

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence.  In particular, Plaintiff points to (a) the assessment of his treating physician, (b) the findings of the consultative examiner, and (c) his own testimony.  Plaintiff contends that this evidence undermines the ALJ's conclusion that he retained the RFC to perform the full

range of light work.

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[3]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford to the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, Dr. Kaufman, Plaintiff's treating orthopedist, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form on August 28, 2006, in which he opined that Plaintiff could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand/walk for 2 hours in an 8-hour workday, and periodically alternate between sitting and standing to relieve pain and discomfort. (T at 137-38). In addition, the

---

[3]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

doctor concluded that climbing, balancing, kneeling, crouching, crawling, and stooping would all severely affect Plaintiff's pain. (T at 138).  Dr. Kaufman also found that Plaintiff would have difficulty reaching. (T at 139).

Dr. Phillip Gilly, a consultative examiner, opined in April of 2006, that Plaintiff was "moderately limited for walking, standing, climbing, lifting, squatting, or bending," but that this was a "temporary condition."  (T at 127).  Plaintiff had fallen down stairs during the week prior to his exam with Dr. Gilly.  (T at 126).  Dr. Gilly expected Plaintiff's condition to improve and indicated that reevaluation might be warranted.  He opined that Plaintiff was "mildly limited for walking, standing, climbing and lifting due to [his] back condition." (T at 127).

Plaintiff testified that he was injured in a car accident on June 28, 2005.  He returned to work for a one-month period in November 2006, but was unable to return to work on a permanent basis after that. (T at 228).  He experiences pain in his back, radiating to his right foot.  Standing "too long," walking, and bending over cause him to experience pain. (T at 230).  Plaintiff testified that he can stand for approximately 15 to 20 minutes before needing to walk around or sit down. (T at 231).  Plaintiff sleeps in a recliner because of his back pain. (T at 232-33).

Plaintiff argues that: Dr. Kaufman's assessment, the consultative examiner's findings, and his own testimony, contradict the ALJ's conclusion that he retained the RFC to perform light work.  This Court finds this argument unpersuasive and further finds that the ALJ's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.

As noted by the ALJ, Dr. Kaufman's treating relationship consisted of a relatively

10

small number of visits (three) and his opinion regarding Plaintiff's limitations was rendered in August of 2006. It appears that Plaintiff's treating relationship ended at that point, which was more than a year prior to the ALJ's decision. (T at 20-21). Although Dr. Gilly indicated that reevaluation "may" be warranted, his ultimate determination (made in April of 2006) was that Plaintiff's limitations were generally mild, with some temporary, moderate limitations.  (T at 127).  Dr. Karyn Dorenmann, Plaintiff's treating chiropractor, opined in June of 2005 that Plaintiff could return to "light duty" work with no lifting. (T at 118). In treatment notes from January 2007, Dr. Dorenmann recommended that Plaintiff avoid lifting, but did not indicate that he had any work restrictions. (T at 168-71).  In a letter dated January 30, 2007, Dr. Dorenmann indicated that Plaintiff could not lift over 15 pounds, but noted that his condition had "stabilized." (T at 175).

In February of 2007, Dr. Dorenmann noted that Plaintiff was looking for work and was "feeling pretty decent," provided he avoided heavy lifting. (T at 178).  On February 28, 2007, Dr. Dorenmann's notes indicated that Plaintiff was walking 30-60 minutes per day and she recommended that he increase his walking time daily for exercise. (T at 182).  She noted no work restrictions, other than to avoid lifting. (T at 182).  Treatment notes from April of 2007 indicated continued lifting restrictions, but otherwise no work restrictions.  In addition, Plaintiff was noted to be looking for work and Dr. Dorenmann referenced a functional capacity evaluation ("FCE") indicating that Plaintiff could perform light work. (T at 188-89).  Dr. Dorenmann did not note any disagreement with this finding. (T at 189).[4] Dr. Dorenmann's notes consistently reflected Plaintiff's continued efforts to look for work

---

[4]The FCE referenced by Dr. Dorenmann does not appear to be in the administrative record.

during the spring and summer months of 2007 and indicated a work limitation only as to heavy lifting, with no indication as to limitations concerning sitting, standing, walking, or other work-related activities. (T at 190-202).

Plaintiff testified that he can lift a 20-pound bag of dog food and indicated that he can walk for up to ½ a mile. (T at 231, 84).  He treats his pain using only over-the-counter ibuprofen. (T at 235, 87).  Plaintiff told Dr. Gilly that he was able to perform light cooking, cleaning, laundry, and shopping. (T at 125).  Plaintiff indicated that he takes shopping trips every two weeks and enjoys hunting on an annual basis. (T at 82).

Based upon the foregoing, this Court finds that substantial evidence supports the ALJ's assessment that Plaintiff retained the RFC to sit for 6 hours with normal breaks, stand for six hours with normal breaks, lift 20 pounds occasionally, and occasionally bend, with no heavy lifting. (T at 21).

Additional support for the ALJ's assessment is found in the opinion provided that the State Agency review analyst, who opined that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk/sit for about 6 hours in an 8-hour workday, and push/pull without limitation. (T at 130).  It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.  See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as

a whole."); <u>Brunson v. Barnhart</u>, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

Accordingly, this Court finds that the ALJ's determination that Plaintiff retained the RFC to perform the full range of light work should be sustained as supported by substantial evidence.

### c.      Treating Physician's Rule

Plaintiff contends that Dr. Kaufmann's assessment should have been afforded controlling weight.  For the reasons outlined above, this Court finds that argument to be without merit.  The ALJ noted Plaintiff's limited treating history with Dr. Kaufmann and the fact that the doctor's opinions were rendered more than a year prior to the ALJ's decision. As outlined in the preceding section, the chiropractic treatment notes indicated that Plaintiff's condition had stabilized over time and particularly during the year preceding the ALJ's decision, with a limitation remaining with regard to heavy lifting, but with Plaintiff otherwise able to perform the demands of light work.   Further, the clinical findings, consultative examiner's findings, Plaintiff's testimony concerning his activities and abilities, and the State Agency review analyst's assessment all provided support for the ALJ's conclusion that Dr. Kaufmann's opinion was not entitled to controlling weight.  As such, this Court finds no reversible error as to this aspect of the Court's decision.

### d.      New Evidence

The Social Security Regulations provide, in pertinent part, that the Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date

of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); <u>see also</u> § 416.1470(b); <u>Perez v. Chater</u>, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); <u>see</u> § 416.1470(b)."

To obtain a review of the additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." <u>Sergenton v. Barnhart</u>, 470 F.Supp.2d 194, 204 (E.D.N.Y.2007) (citing <u>Lisa v. Sec'y of Health & Human Servs.</u>, 940 F.2d 40, 43 (2d Cir.1991)).

Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." <u>Id.</u> If the Appeals Council fails to consider new, material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." <u>Shrack v. Astrue</u>, 608 F.Supp.2d 297, 302 (D.Conn.2009).

In this case, Plaintiff submitted evidence to the Appeals Council regarding emergency room treatment for a small bowel obstruction in August of 2006 (T at 211-13), February of 2008 (T at 215-15), March of 2008 (T at 216-221), and June of 2008 (T at 222-24). The Appeals Council considered this additional evidence (T at 4, 7), but found that it did not provide a basis for changing the ALJ's decision. (T at 5).

This Court finds no reversible error with respect to the Appeals Council's decision. Plaintiff did not identify his small bowel obstruction as a disabling condition and none of his providers indicated that the condition imposed any work-related limitations. (T at 66). There

14

is no indication of treatment for the condition other than the acute care received in the emergency room on the above-referenced occasions.

Moreover, most of the new evidence related to treatment occurring after the date of the ALJ's decision.  As such, the new evidence was not "material" to the ALJ's decision to the extent it arguably documented a worsening in Plaintiff's small bowel obstruction condition during the period after the ALJ rendered his decision.  If Plaintiff did suffer such an aggravation, his proper remedy would be to submit a new application for benefits.  See Shrack v. Astrue. 608 F. Supp.2d 297, 302 (D.Conn. 2009)("Evidence is material in this context if it is relevant to the plaintiff's condition during the time period at issue and it is probative. The SSA thus need not consider evidence related to plaintiff's condition after the date of the ALJ's decision . . . .")(citing Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir.1988)); Estevez v. Apfel, No. 97-Civ-4034, 1998 WL 872410, at *7 (S.D.N.Y. Dec. 14, 1998)("Materiality requires that the new evidence not concern 'a later-acquired disability or the subsequent deterioration of the previous non-disabling condition.'"); see also 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) ("If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application.")[5]; DeChirico v. Callahan, 134 F.3d 1177, 1184 (2d Cir.1998)(noting that "[the claimant was], of course, free to file a new application for benefits, pursuant to the relevant

---

[5]Here, it appears the Appeals Council did not notify Plaintiff of his right to file a new application for benefits related to the period after the ALJ's decision.  However, there is no indication that this prejudiced Plaintiff, who was (and has been) represented by counsel with experience in the social security disability field.

regulations, and to present new evidence of his disability at that time").

Accordingly, this Court finds no basis to remand with regard to the Appeals Council's decision.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ adequately examined and summarized the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers and the non-examining State Agency review consultant, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   May 23, 2011
         Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were*

*not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc.

v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).


SO ORDERED.
May 23, 2011

_____
Victor E. Bianchini
United States Magistrate Judge

18